AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California



FILED
4/14/2023
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  vyc  DEPUTY

| In the Matter of the Search of | ) |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) Case No. 23MJ8234 |
| White Apple i-Phone<br>Model: Unknown<br>IMEI: Unknown | ) ) ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Cristina Fuentes incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Border Patrol Agent Cristina Fuentes
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date: ___04/13/2023___

_____
Judge's signature

City and state: El Centro, California          HON. LUPE RODRIGUEZ, JR., US MAGISTRATE JUDGE
Printed name and title

# ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**         White Apple i-Phone
            Model: Unknown
            IMEI: Unknown
            Seized from Jose Manuel MARTINEZ-Avila
            **(Target Device #2)**

 

The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of February 11, 2023, up to and including March 11, 2022, and is limited to the following:

a.  tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.  tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.  tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.  tending to identify the user of, or persons with control over or access to, the Target Devices;

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Cristina Fuentes, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**  Silver LG Phone
Model: Unknown
IMEI: Unknown
Seized from Jose Manuel MARTINEZ
**(Target Device #1)**

**A-2:**  White Apple i-Phone
Model: Unknown
IMEI: Unknown
Seized from Jose Manuel MARTINEZ
**(Target Device #2) (collectively "Target Devices")**

as further described in Attachments A-1 and A-2, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Jose MARTINEZ (MARTINEZ) for illegally transporting aliens Alejandro CORTEZ-Ruiz, Jose Luis MENDEZ-Lorenzo, and Erik VALDEZ-Mendoza (the "Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from MARTINEZ on or about March 10, 2023, incident to his arrest. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my

review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

5. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since May 2019, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 24-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

6. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities,

including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing to make smuggling arrangements, receive instructions, and report their locations after crossing.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with

geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

11. On March 10, 2023, BPA O. Ismail was assigned to line watch duties approximately seven miles east of the Calexico West Port of Entry (POE). BPA O. Ismail was patrolling the area in a fully marked United States Border Patrol service vehicle with lights and sirens. In this area, the United States/Mexico International Boundary Fence (IBF) is marked by a 15-foot-tall metal fence and monuments. This area of the border consists of large agricultural fields. The All-American Canal (AAC) traverses this zone from east to west and there are several dirt roads leading to the border. The Briar Canal

parallels the AAC and is separated by a dirt road. The canals are managed by Imperial Irrigation District (IID).

12.     At approximately 7:10 p.m., a Remote Video Surveillance System (RVSS) operator notified agents in the field via service radio that a white vehicle was driving south on the Ash Field Road towards the AAC, which is about 50 yards north from the IBF. The vehicle was later confirmed to be a white Ford F-150 (Ford).

13.     BPA O. Ismail responded to the area where the RVSS operator last had visual of the Ford. As BPA O. Ismail approached the area near the Calexico East POE, BPA O. Ismail observed the vehicle driving eastbound. At the time there was no agricultural activity in the area and the vehicle did not display any markings or IID labels. BPA O. Ismail felt the vehicle was out of place and believed it was possibly in the area to be used in an attempt to smuggle illegal aliens. BPA O. Ismail drove within twenty feet of the vehicle in his clearly marked Border Patrol vehicle and activated his emergency lights and sirens to perform a vehicle stop. The vehicle continued to drive eastbound at approximately 25 miles per hour and did not respond to his emergency lights and sirens.

14.     BPA O. Ismail was able to drive close enough to read the license plate to El Centro Sector Radio Communications via service radio. BPA O. Ismail had visual of two subjects inside the vehicle. BPA O. Ismail did not see any occupants inside or in the bed of the Ford. The Ford accelerated in speed throughout the dirt roads to avoid being stopped. The vehicle then continued west under the Calexico East POE Bridge and then north on the Ash field road towards Carr Road.

15.     Upon reaching the hard top surface of the street on Carr Road, the vehicle accelerated westbound at a high rate of speed. BPA O. Ismail followed the vehicle at a safe distance of approximately 200 yards with his lights and sirens activated. The vehicle drove northbound on Anderholt Road and then continued west on Highway 98. BPA M. Zakar and BPA J. Snyder deployed Controlled Tire Deflation Devices (CTDDs) near Highway 98 and Cole Road, successfully deflating three of the vehicle's four tires.

16. The Ford continued driving west on deflated tires until it came to a stop at Bowker Road and Highway 98. Two individuals, including one later identified as MARTINEZ, fled on foot into the neighborhood houses in an attempt to avoid apprehension. BPA O. Ismail, BPA M. Zakar and BPA M. Gonzalez followed the individuals into the residential area. BPA O. Ismail apprehended MARTINEZ. BPA M. Gonzalez also assisted BPA O. Ismail on the apprehension of MARTINEZ by taking control of MARTINEZ to allow BPA O. Ismail to search for the second individual. BPA M. Gonzalez later stated to BPA O. Ismail that he, BPA M. Gonzalez, was assaulted during the apprehension of MARTINEZ. BPA M. Gonzalez suffered an assault to the groin as MARTINEZ struggled to escape from BPA M. Gonzalez.

17. MARTINEZ had two cellphones on his person at the time of his arrest. The first cellphone, a silver LG cell phone **(Target Device #1)** fell from his pocket and was on the ground during the apprehension. BPA G. Carmona picked up the cellphone and handed it to SBPA J. Snyder. The second cellphone, a White iPhone **(Target Device #2)** was found inside MARTINEZ's right-side pocket after being searched by SBPA J. Snyder.

18. After reviewing prior camera footage of the area near where the white Ford was driving along the AAC, it was discovered that a group of illegal aliens had rafted across the AAC and were hiding in the brush on the northern bank. BPA C. Osuna drove to the area and found that eight illegal aliens, later identified as Maria CHAVEZ-Alvara, Alejandro CORTEZ-Ruiz, Nicolas GONZALEZ-Santiago, Jose Luis MENDEZ-Lorenzo, Carmen OROZCO-Lopez, Maria SANCHEZ-Ruiz, Josue David SILVA-Carrillo, and Erik VALDEZ-Mendoza. All eight illegal aliens were still in the brush attempting to hide. It was later determined, through the principal's own statements, that the group of eight illegal aliens were Mexican citizens and were intended to be picked up by MARTINEZ.

19. On March 10, 2023, at approximately 10:42 p.m., at the Calexico Border Patrol Station, BPA C. Ortiz and BPA C. Pluim interviewed MARTINEZ as to his role and involvement in smuggling illegal aliens into the United States. MARTINEZ stated he was born in the United States. MARTINEZ stated he currently resides in Baja California and is

a United States Citizen. MARTINEZ stated he had smuggled illegal aliens on several prior occasions as a minor. MARTINEZ stated he was contacted by a smuggler who gave him instructions as to what to do once in Calexico, California. MARTINEZ stated he was being accompanied by his friend, MAYA. MARTINEZ stated he was instructed to pick up a white truck at the AA parking lot in Calexico, California and drive towards the new POE, east of Calexico, where he would be picking up an unknown number of individuals. MARTINEZ stated he was going to get paid $450 U.S. dollars per person. MARTINEZ stated he drove to the pick-up location by the POE. MARTINEZ stated that when he saw a Border Patrol Agent driving up to him, he immediately drove away. MARTINEZ stated that he panicked and did not stop when the Border Patrol Agent was pursuing him. MARTINEZ stated that once he decided to stop, he got out of the vehicle and began to run. MARTINEZ was then apprehended and put into custody by Border Patrol Agents.

20. On March 10, 2023, BPA A. Flores conducted a videotaped sworn statement interview with MAYA regarding his involvement in smuggling eight illegal aliens further into the United States. At approximately 10:10 PM, BPA A. Flores read MAYA his Miranda Rights in the English Language and was witnessed by BPA C. Pluim. MAYA stated that he understood his rights and was willing to answer questions without the presence of an attorney. MAYA stated that he was born in Arizona. MAYA stated that he is a United States Citizen. MAYA stated that he currently lives in Baja California. MAYA stated that before the incident occurred, they met with a friend in Baja California. MAYA further stated that they were going to meet with a group of girls in Calexico, California and then pick up a truck at the AA parking lot in Calexico, California. MAYA stated that they had picked up the truck and waited for the girls in a field but that the girls never showed up. MAYA stated that while they waited in the fields near the location of the incident, they smoked weed, until they saw an Agent nearby, when they fled the scene because his friend feared of getting caught again.

21. On March 10, 2023, at approximately 11:15 PM, BPA C. Ortiz conducted an interview with MENDOZA which was witnessed by BPA J. Gellatly. MENDOZA stated

7

that he was born in Mexico. MENDOZA stated that he is a citizen of Mexico and does not possess any immigration documents that would allow him to work or reside in the United States legally. MENDOZA stated he was going to pay $8,000 United States Dollars to be transported to Los Angeles, California.

22. On March 10, 2023, at 10:55 PM, BPA M. Gonzalez conducted a video sworn statement of material witness CORTEZ, which was witnessed by BPA K. Berggren. CORTEZ stated that he is a citizen of Mexico and does not have documentation to be in the United States legally. CORTEZ stated that someone in Mexico made the arrangements for him to be smuggled into the United States for a total of $7000 USD.

23. On March 11, 2023, at 1:11 AM, BPA M. Gonzalez conducted a video sworn statement of material witness MENDEZ, which was witnessed by BPA C. Pluim. MENDEZ stated that he is a citizen of Mexico and does not have documentation to be in the United States legally. MENDEZ stated that he was supposed to pay $7000 U.S. dollars to be smuggled into the United States.

24. Based upon my experience and investigation in this case, I believe that MARTINEZ and other persons, yet unknown, were involved in an alien smuggling venture and that MARTINEZ used the Target Devices to coordinate with the as yet unknown persons to bring the aliens into the United States and/or transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the Target Devices, which may identify other persons involved in alien smuggling activities.

25. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on

February 11, 2023, up to and including March 11, 2023, the day after the arrest of MARTINEZ.

## METHODOLOGY

26. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

27. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject it to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

28. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

## CONCLUSION

29. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that MARTINEZ used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by MARTINEZ, the Material Witness, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Cristina Fuentes, Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 13th day of April, 2023.

_____4:49 p.m._____
HON. LUPE RODRIGUEZ JR.,
UNITED STATES MAGISTRATE JUDGE

10

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**    Silver LG Phone
Model: Unknown
IMEI: Unknown
Seized from Jose Manuel MARTINEZ-Avila
**(Target Device #1)**

 

The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**         White Apple i-Phone
            Model: Unknown
            IMEI: Unknown
            Seized from Jose Manuel MARTINEZ-Avila
            **(Target Device #2)**

 

The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of February 11, 2023, up to and including March 11, 2022, and is limited to the following:

   a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

   d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

   e. tending to identify the user of, or persons with control over or access to, the Target Devices;

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.